The last case on this morning's docket is the case of in re Detention of Harold Penter. And we have Mr. Richard Thompson for the appellant and Carl Treibel for the appellate. Mr. Thompson, you may proceed. Thank you. Please support. I represent the appellant, Harold Penter, in this case. And I don't intend to take too much of your time, unless you have questions, because I think this case is pretty simple on the level of facts, on the level of the law. I'll summarize what I think the relevant parts of the law are. The law basically is that if a respondent in a sexually violent person's commitment hearing has refused to be interviewed personally by the state's experts, then that respondent is barred from presenting any testimony at his hearing based on an interview with his own experts. So if you're not refused to be interviewed by the state, you can't use your own interview with your own expert at trial. That's the statute. The facts in our case that are relevant are concisely presented on page 7 of my brief. And I think the relevant facts are simply that when Harold's hearing came up on whether or not he should be committed to the DHS as a sexually violent person, the state presented a witness who testified based on an interview with Harold, and Harold was barred from doing so. That's really all you need to know. Well, let me ask this question. Okay. Because this is the main question I had. Mr. Penner was interviewed for an exit interview. Correct. He refused to submit to an interview as an evaluating interview as far as the petition that was filed. Is there a substantive difference between the two interviews? Is there a legally relevant difference between the two interviews? Is there a distinguishing – what are the distinguishing factors between the two? I don't think there is a substantive or a legally relevant distinguishing factor between the two because the statute, when it says if the respondent refuses to be interviewed by the state, it refers to the DOC, Department of Corrections, exit interview, or the Department of Human Services evaluation interview. And then the Giovino case from 2000 applying the statute envisions actually the exact situation that Harold was in where he cooperated with the first interview, the exit interview. He refused to cooperate with the evaluation interview. And Trevino says even in that case, if the state is allowed to present an examining expert, the respondent must be allowed to present an examining expert as well. So based on Trevino's interpretation in the brief on page 17, I think it's almost point by point parallel facts between what happened in Trevino and what happened to Harold, which you've just explained. He went along with the first interview. He didn't go along with the second. There didn't seem to be in Trevino's analysis any distinguishing characteristic or matter of legal relevance or fact that they cooperated with one state's witness but not with the other relevant in any way. It seems to me, then, that the person, whether or not they're sexually violent, controls how much information can be considered regarding their condition by refusing to cooperate. That is the point of view that the state has taken in this case. And I think the state misstates the purpose of the statute. The state, I quote, says the purpose of the statute is to prevent the respondent from controlling the prosecution of the case. And that's a point of view that could be taken. But the statute and the case law are what they are. The statute is what it is. The case law does seem to interpret it, or at least Trevino does seem to interpret it, as you suggest. And I think Courtsay, before Trevino, around the same time as Trevino, also emphasizes that the purpose of the statute is to provide a level playing field. So if the state has interview testimony, the respondent gets to present interview testimony. Does it matter at all that apparently the responder refused to be examined by his own expert? No, it doesn't. Because the point of the statute is not who can control. The point of the statute is to protect the due process rights of the respondent. And the state is not allowed to present evidence that I assume would be of a higher quality or more detailed quality than the respondent can. Can or could, because he did have the right if he wanted to present and have his own witness? He could have, of course. The statute envisions that possibility that he could. But once the respondent refuses to cooperate, the statute and Trevino and Courtay say that the state cannot present any better evidence, you might say, than the respondent. Yes, so can the respondent create a situation like, I don't know if Harold did it intentionally or not, but can the respondent set it up so that the state can't present interview testimony? Yes. But that's what the statute in its interpretations by Trevino and Courtay very clearly allows. And in the analysis of Trevino especially, well, and Courtay also, the purpose is the level playing field. The purpose of the statute is to ensure that both parties have a fair shot. And it's not about who can control the litigation, although obviously that question arises, but neither the statute nor Trevino nor Courtay address that. But I think we understand the facts and the law, so I don't have anything further unless there are other questions. You'll have the opportunity for rebuttal. Right. Mr. Thompson. Thank you. Mr. Trevill. Good morning, Your Honors. Good morning. Counsel, and may I please report? I'm Assistant Attorney General Carl Trevill representing the people of Illinois. Respondent refused to meet with Dr. Witherspoon. If the court reviews pages C459 to 460 of the record, in those pages, counsel explains to the trial court that she has already been out to see her client with Dr. Witherspoon, and that at that time, respondent refused to cooperate with Dr. Witherspoon. That happened before the hearing on the motion to eliminate. Respondent's Exhibit 1 that he filed with the trial court is a report from Dr. Witherspoon, which begins with an explanation to counsel that Dr. Witherspoon cannot proffer any kind of expert opinion on whether or not respondent is an SVP because respondent has refused to meet with them. That's not the first interview when respondent did meet with the interviewer. This is a subsequent interview. Is that correct? There were three experts at issue, Your Honor. You're correct that the first interview respondent had with any expert took place prior to the filing of the petition in this case. That was the exit interview. I'm sorry? That was the exit interview. Yes, Your Honor. That was the exit interview with Dr. Buck. What respondent is arguing here is that he should have been allowed to call his own examining witness, somebody who had met with him and who would provide expert testimony on his behalf. But he refused that examination. So even if the trial court had denied the people's motion below, what would respondent have presented at trial? He had refused to meet with his witness. Why couldn't he produce the results, produce the witness of the first interview? Yes, Your Honor. Dr. Buck's interview was discussed through witness testimony at trial. To be clear. Was the doctor presented at trial? Dr. Witherspoon? The first interviewer, Dr. Buck. Yes, the first interview with Dr. Buck was discussed at trial. She testified at trial. Her original report was made part of the record when the petition was filed. It was Exhibit A of the people's petition. And to be clear, the trial court's ruling below did not prohibit respondent from calling Dr. Witherspoon, his own appointed expert, as a witness. Indeed, Dr. Witherspoon appeared via a stipulation that he would have testified consistent with his report, and the report was taken in lieu of that testimony. What the court held was that respondent was not allowed to call Dr. Witherspoon or a similar expert to testify based on a personal interview with him after he had refused to meet with the DHS expert. But, again, even if the trial court had denied the state's motion and not made that ruling, it wouldn't have made any difference in this case because respondent, prior to the hearing on the motion to eliminate, had already refused to meet with his expert. He didn't refuse to meet with his expert based on the trial court's ruling on the motion to eliminate. He refused to meet with his expert of his own volition, and that choice prevented him, as a matter of fact, from calling and examining witnesses. Was there any attempt on the record, obviously what's said between attorney and client's privilege, but was there any attempt on the record to explain to Mr. Penner that in order to present that type of witness, he had to go through another interview? He had already had the exit interview. That could be considered, that witness could be called, that this is a different proceeding than an exit procedure, and in order to be heard, in order to have a possibility of prevailing, he had to consent to this, and it was a different animal, basically. Yes, Your Honor. The trial court did explain to respondent that his refusal to meet with the DHS expert was going to result in his failure to call his own expert to trial. Was the DHS expert posed to him as a neutral or as an expert for a particular side, either the states or his? I'm not sure how it was couched in those terms, Your Honor. The record does have a waiver that respondent signs when he meets with the DHS expert and in this case refuses to meet them, and that form explains to him the rights that he is giving up by refusing to discuss the case with the DHS expert. So that form informed him of it, and then there's a colloquy between him and the trial court on the record where the trial court informs him of it. But again, that's an interesting legal issue that is completely mooted in this case by his prior refusal to meet with his own expert. If he had won below on this motion to eliminate, which is what he's asking this court to do, is essentially reverse the judgment on the motion to eliminate. If he had won on that motion, who would he have called as an examining witness? The answer is no one because he had already refused to cooperate with Dr. Winterstein. But he had a prior interview, and he was examined by someone. Why couldn't he call that person? That was before the court, and that was the state's. Yes, Your Honor. He had met with Dr. Buck, who was the IDOC expert appointed to decide whether or not it was appropriate to file a petition to declare a respondent an SVP. So he had the opportunity to cross-examine Dr. Buck and did on the record. Can I ask you, do you think that Trevino is controlling? And if so, do you think it's a correct interpretation of the statute? I guess there's a few different answers to that, Your Honor. It's not controlling for two reasons. It's not controlling, first of all, because of the facts of this case. It doesn't contemplate a situation where the respondent refused to talk to his own expert. But beyond that, it's not controlling of this court because it's an opinion of a different appellate court. If this court disagreed with our interpretation of the facts and felt that it should consider the Trevino issue, then we would argue that it is not properly decided. So you think the statute that Trevino, considering the difference in facts, was not an accurate interpretation of the case? Right. It would be a much different case if the respondent had agreed to meet with his expert and then the Trevino. Let's assume that. Right. And assuming that he had, then our argument would be that Trevino was incorrectly decided. The plain language of the statute is clear that once you meet with either the DHS, refuse to meet with either the DHS expert or the IDOC expert from the people, then you're not allowed to bring your own expert witness. The plain language uses the disjunctive or there instead of an and, so it's making clear that refuse to meet with either of those experts bars you from calling an examiner. But does not bar the state. Correct. And to be clear, there's nothing in the statute that says that the state is barred from using its own expert witness. The point here is to do a fact-finding determination of whether or not the person is an SVP, and that testimony or that interview would be between the respondent and the IDOC expert is relevant. There's no due process problem here because similar reasons why the Illinois Supreme Court rejected a due process argument in a case where the state called two expert witnesses and the respondent had only called one. The argument in that case was that it's not fair that they get two experts and we only get one. But that's what the statute calls for. And the Illinois Supreme Court explained that that is not a due process violation. But, again, that's not – all of those legal arguments are not implicated by this case because prior to the ruling on the motion to eliminate, he had already refused to cooperate with Dr. Witherspoon. So he could not actually call an examining witness of his own. The respondent's brief also raises two other points I just wanted to briefly touch on, Your Honors. Regarding the motion to withdraw counsel, the people's opinion is that, first of all, an indigent party has no right to withdraw counsel without showing good cause. And here the case law is clear that just disagreeing with counsel or having personal disagreements or disagreements about how the case should be strategically tried, that is not good cause under the motion to withdraw for an indigent party. And then, moreover, Rule 13c, which is what respondent relies on, does not apply to indigent defendants. Even if it did, if the court disagreed with our point on that, even if it did, first of all, this met the discretion standard given to trial courts under Rule 13c. And, second of all, harmless error applies. And in a case where the respondent had sexually assaulted two 15-year-old girls, a 16-year-old girl, two 12-year-old girls, and fondled a 9-year-old girl, any error in handling that motion to withdraw counsel was harmless. And for similar reasons, even assuming Strickland applied to this case, there's no prejudice, particularly where Dr. Buck did testify, about the possibility of whether or not a respondent's medical condition affected his likelihood to reoffend. And she explained that even people who have suffered much worse medical conditions remain likely to reoffend. Unless there are further questions, Your Honor, I would ask that you affirm the judgment. Do you have a rebuttal? I do. Okay. I'd like to refer to a couple items from the record recorded in my appellant's brief on page 10. In 2006, the state filed its motion to bar evidence of examination of the respondent. Now, the hero was found to be sexually violent in person until 2009, three years later. In October of 2006, the state's motion to bar evidence was argued, and in that hearing, Harold's then-lawyer, Ms. Katz, said to Harold, Do you understand that if you refuse to cooperate and answer questions asked to you by the state's expert, the Dr. Witherspoon, Harold's expert, has been appointed to testify on your behalf, will also be prohibited from asking you any questions. Do you understand that? Harold says yes. Then Ms. Katz says, I have advised you previously today for the first time as to the ramifications of that refusal. Correct? Harold, yes, ma'am. Ms. Katz, do you not wish to cooperate with the state's expert in order to also be able to give an interview to Dr. Witherspoon, your expert? Harold, no. So in 2006, Harold was presented with the option. If you cooperate with the state, then you can go and get interviewed by Dr. Witherspoon and present that evidence at trial. Do you want to cooperate with the state so you can do that? And Harold, in 2006, says no. Well, at the trial in 2009, three years later, Ms. Katz, referring to this as a T-242, it's not fair for the trial court to prevent her from allowing Harold to be interviewed by Dr. Witherspoon, now going back and allowing the state to present evidence from that first interview with Dr. Buck. She says at T-243, my client wasn't allowed to speak to Dr. Witherspoon at all. At T-244, it wasn't well taken when the state moved to bar evidence, because obviously they did have the benefit of a personal interview with Harold, and Harold should not have been barred from talking to his own experts. So if Harold had known in 2006 that the state was going to call an interviewing expert anyway, that might have affected his decision to cooperate with the state's second interview and his own. But in 2006, he was told, if you don't cooperate with the state, you can't bring your own witness. Is that okay? He said, yes, that's okay. Do you want to cooperate with the state? No. Well, then in 2009, three years later, the state springs another examining witness on him. But that wasn't fair to him, because he had already decided, based on what he had been told three years earlier, that he wasn't going to avail himself of the opportunity to cooperate with the state. So why didn't he, when the state says, well, he didn't have any testimony to present anyway, well, no, of course he didn't, because he had been told that, well, when you refuse to talk to the state, you might as well not talk to your own witness either. So he didn't. Three years later, his hearing comes, the state springs a witness from before this process began. That's all I have. Thank you both for your arguments and briefs and listening manner and advisement.